Alright, we've got this cleared out. Our second case for this morning is Manuel against the City of Joliet. Mr. Eisenhammer. May it please the court. The central issue in this case is whether Manuel's Section 1983 pretrial post-legal process Fourth Amendment claim is timely. This issue turns on when Manuel's claim accrued, unless of course the defendants waive that issue. We contend that his claim accrued when the charges were dropped based upon established principles announced by the Supreme Court in Wallace, Manuel, Heck, and followed by this court in Julian. So your theory, I think, does depend on our understanding of the Fourth Amendment to have a variety of different accrual times. So, you know, an excessive force claim, such as what we might have in some cases, surely accrues at the time the excessive force is applied, not when charges are dropped or later. It would be inconsistent with Wallace to say otherwise. And, you know, there are other kinds of Fourth Amendment claims. Here we have a claim that goes beyond just the arrest to formal detention stage, as we were instructed by the Supreme Court. So I want to know why, how many of the accrual times are there and why are there different times in your view? I think in part to serve what I think the Supreme Court says, the values and purposes of the amendment. So there are different common law analogs depending on which slice of the Fourth Amendment you're looking at? It appears the Supreme Court has said so. For example, in Wallace, the court said with respect to a pre-legal process claim, that accrual point is not at the arrest, actually it's a deferred accrual point, either when the person is released or upon legal process. But then in Wallace, the court said once legal process starts, we have enough, well, we are governed by another amendment, which is, I mean, we're governed by another analogous tort, which is Melissa's prosecution. Well, that's right. I mean, it's Manuel that says it's not, we have been saying it was another amendment, but we have been instructed that that was not the right thing. Right. You've been influencing me too much. But it's another tort that we look at, which is Melissa's prosecution, which has a deferred accrual point. Why would we pay any attention to malicious prosecution when the whole point of the Supreme Court's opinion was to get rid of the malicious prosecution analogy? It went into the Supreme Court with your client talking about Fourth Amendment malicious prosecution, and it came out with a holding of Fourth Amendment plain and simple. Correct. That's because... So why would we put malicious prosecution back in? Because... Justices took it out. Yeah, you are correct, because there is no mismatch between the Fourth Amendment and malicious prosecution. Each plays a role in this case, and their roles don't conflict. Well, let me rescue you for a minute. Did the justices take it all the way out? No, they didn't. Toward the end of the opinion of the court, and I don't want to get into any dissents, because dissents are dissents, the court starts reviewing what's left to happen. And they note that the city says that the most analogous tort is false arrest, and that Manuel might think the most analogous tort is malicious prosecution. And then they just punt. They say, we leave consideration of this dispute to the Court of Appeals, so here we are. But I'm not sure that I can myself get from that language that malicious prosecution for accrual purposes has been removed as an analogy. Right, it hasn't, because the first step, the threshold question in any 1983 question is what amendment has been violated. And that's what the court ruled on. It's the Fourth Amendment, and we don't have to, in any 1983 case, we don't have to look at the common law to figure out what amendment is violated. After that, the court has said, you now go to the elements. Well, accrual is a federal question. Right, and you go to the accrual question, and the accrual question is a federal question, and the court has said that you look to the common law as a starting point. And what you look at is the most analogous common law tort. So they do fit. You do have to look both at the constitutional claim and then at the common law, because neither 1983 or the Fourth Amendment say anything about what the accrual point should be. So I'm going to tell you that also perhaps, I'm not sure whether this helps you or your opponents, but the court has even mushier language in Manuel, where they say common law principles are meant to guide rather than control, inspired examples, values and purposes of the constitutional right. And so we have to instantiate that somehow. Right. And I think when you're looking at the values and purposes of the Fourth Amendment with a post-legal process claim, the values and the purposes of the amendment is most served by having a delayed accrual point. Instead of talking about fluff, why not talk about Priser against Rodriguez? Yes, because that in a sense- Priser against Rodriguez is not fluff. It's not values and purposes. Right. It's actually a holding. It's the holding, because it relates to- Do you need more than Priser against Rodriguez? I don't really, because it deals with confinements. Stop. Stop or you're ahead. I guess I was getting to that point. The main point is- Because once you start talking values and purposes, you may find that mine aren't the same as yours. Well, that's true. I guess that's true. My values is preserved. And, heck, that you don't want- As you apply that Priser and, heck, to our case, the same principles apply. You don't want parallel state and federal litigation leading to inconsistent results. And it prevents collateral attacks on state court determinations, in our case, on a due process issue. And it prevents state probable cause determinations being undermined in federal court. I would say there's another problem with going down a different path, which is the inability of people to know whether they can file a plausible claim consistently with Rule 11, whether everybody who's arrested should just throw a 1983 into the hopper, just in case. Yes. Because the other way what will happen is that people will- Defendants in criminal cases will file immediately in federal court, trying to preserve their claim. And we will have- These claims will be in our courts, in the district court, for years, if not decades, waiting for either the defendant to be cleared or the sentence expire. So you may have- The district court may wind up with a whole division of these type of cases, just waiting, where it's just easier to say, we'll wait to favorable determination to allow the plaintiff, the civil rights plaintiff, to bring an action. Mr. Eisenheimer, you just hit on something that I've been bothered by. Why should we require that there was a favorable termination of the criminal proceedings as opposed to simply a termination of the criminal proceedings? For instance, if Manuel proceeded to trial and was convicted based on other unrelated evidence and was not sentenced to any jail time, why shouldn't he still be able to challenge the pretrial incarceration that, you know, was the result of the unreasonable seizure? Doesn't the Fourth Amendment make us independent from the guilt or innocence of the person? I think that's one possible way without- Let me just say that all the other circuits have not gone that way. They all have gone with the approval. Isn't the problem, if you did that, the fact that because of principles of issue preclusion, whatever findings the state court made in terms of probable cause and the like would be binding? That's true. There's a line of common law cases that say, if you're convicted, that is proof that there was probable cause, so you could run into that particular issue. This issue only really comes up on a hypothetical situation, or maybe not a hypothetical one, but one that's never come up. In the 20 years since Albright, there has been no case that we could find, anybody could find, where a Section 1983 case is brought because I think there was no probable cause, but I was convicted anyway, and that sentence was never overturned. I think it's mostly because defendants are loathe- criminal defendants are loathe to say, hey, I'm going to bring an action because there's no probable cause, but I'm going to admit that I'm guilty. So you never see that case, and if we do see that case, I think we should just wait. It's not before us in this particular case. Our case doesn't turn. The individual case doesn't turn on it. And I think we should just wait to have that case, if it ever comes up, to be heard, because I guarantee you the defendants in this case or in that case will be arguing for favorable determination. I think one other reason for allowing favorable determination, there's two others I would say. There's one that it's difficult for a defendant who's in jail, who's trying to prove his innocence, all of a sudden doing it at the same time, trying to prove a civil rights case. Wasn't that Mr. Manuel's problem? I mean, he's arrested. I mean, he doesn't know probably at that point what went on with the field test, and they don't tell him when the lab reports that actually there's nothing wrong with the pills. So he's actually not at all aware that he has any kind of claim until he's at least told about it, which I gather on this record is the 4th of May. Right, right. Or it might have been a little bit sooner, but right around 4th of May, he was told about the drug results, and then he was... Yes, after the time, so yes. And then also, it could have been even worse. They could have not told him at all. Held it out like some of the other cases that you have heard, and this could have gone on for years before it came out, way over the 2-year period, and then the defendants would say he has no cause of action, even though he had no proof, no nothing to be able to prove his case, and they would have been probably thrown out on a Rule 11 issue. You can save time for rebuttal if you'd like. Unless there's any other questions. I see none, so thank you. Thank you. Mr. Scodro. Thank you, Your Honor, Counsel, Mike Scodro for the defendants. I'd like to begin, if I could, with the principle where I think this argument just started, which is the Fourth Amendment and the fact that what the Court did say, and this is at the very bottom of A15 in the majority opinion, is that at the end of the day, we must closely attend to the values and purposes of the constitutional right at issue. And I think the disconnect between us, there are two places in plaintiff's briefing where there is a reference to their rule protecting the truly innocent. This is on page 20 of their opening brief and 17 of the reply. And I think the disconnect is that the Fourth Amendment is not designed solely to protect the innocent. And we do have real cases, and we cite the Margheim case out of the Tenth Circuit, a very recent decision which applies precisely the rule that plaintiff is seeking here. And in that case, you have the plaintiff at the end saying, wait a minute, my claims have been nalprost. The Court has determined that nevertheless there is insufficient indicia of innocence underlying that nalprost decision. But everyone agrees that I was arrested pursuant to a bad warrant. Why can't I bring my 1983 claim? And the Court says because here we apply the malicious prosecution elements, namely favorable termination. Well, the Fourth Amendment in general is designed to protect the public and designed to ensure that, you know, searches and seizures are done on the basis of probable cause and so on and so forth. I'll tell you what worries me about your theory. I think there happened to be something in today's New York Times about some ghastly situation in Alabama where somebody's been waiting around in pretrial detention for 10 years. So under your theory, and I hope Cook County Jail isn't like that, but you never know, or Joliet. But under your theory, the claim accrues at the time of arrest, I suppose, or maybe at the time that the person's pretrial detention begins. Yes. And then it goes for two years. He's still in pretrial detention. But now after two years, it's too late for him to file anything for the post-two-year period. So let's assume he gets in under the wire for two years. He can't really be asked to predict how long he's going to languish in pretrial detention. Why not just say that it's got to end? And actually, there are strong policy reasons under Prizer and other cases to suggest that it should end favorably. Well, Your Honor, a couple of points there. First, I'll just make the point that everyone agrees that every other form of Fourth Amendment claim, including the types that Your Honor listed at the outset of today's oral argument, including false arrest pre-process, everyone agrees that that sort of Fourth Amendment violation. Not every other kind, only those other kinds that don't call custody into question. So an excessive force claim doesn't call custody into question. A claim that a search occurred without a warrant doesn't call custody into question. But it's perfectly easy to imagine claims that do call custody into question. And although you may not be aware of it, we have kind of a patter of cases where even after Wallace, we have to consider the possibility that custody is in question and then figure out whether this claim really calls custody into question. Sure, understood, Your Honor. And I do understand the cases Your Honor refers to. My point would be this, that even pre-process arrests, so during that period before, so in a case where you're arrested and you don't receive process in the form of a Gerstein hearing for the first 48 hours. In this case, it was fewer than 24 hours, but it was still a period of time that day. During that period, everyone agrees, and Wallace held squarely, that that claim accrues upon the initiation of process when you're bound over. So that is a period of detention under the Fourth Amendment that is nevertheless under Wallace. It accrues almost immediately. That is, it accrues on the initiation of process. And I would add that Wallace itself anticipated, not anticipated. I don't see how Heck would allow the claim to be pursued if the defendant is still in, and his contention is that there was never probable cause to arrest me, and therefore being in at all is a legal wrong. Right? Prizer says you can't use 1983 to get release, and Heck says you can't use 1983 to get damages under those situations. And Heck adds, and that means the claim accrues when you get out. My question, which was similar to the question I asked Mr. Eisenhammer, why isn't that the controlling doctrine here? Heck, combined with Prizer. And my answer is Wallace, Your Honor, and here's what I mean by that. But Wallace dealt with a claim that did not call custody into question. What characterizes this claim is that Manuel says there was never any basis for custody. This was a trumped-up charge, and therefore it's nothing but a contest to custody. Go ahead. Your Honor, a point well taken. But what Wallace does go on to say is that any extension of Heck to an instance where there is no conviction, the Court's very clear about this. It not only calls that bizarre, but it says that any challenge to any other claim related to rulings that will likely be made in a pending or anticipated criminal trial are not subject to the Heck bar. The Court in Wallace is very, very clear, and this is aside from the fact that Heck itself in footnote 7 in a series of this Court's decisions. We know from Edwards against Balasag that Heck is not limited to criminal convictions. Or challenges to the length of the resulting detention period. The length of custody. And the word frequently used is confinement, which certainly describes what was happening to Mr. Manuel. Well, that is true, Your Honor. But this Court has said time and again, too, and we cite numerous cases in our brief where this Court has said, look, the fact that you are confined pretrial does not satisfy confinement for Wallace purposes and Heck purposes. Wallace uses the term, and it actually italicizes it, extant. There must be an extant conviction in order for Heck to apply. Now, it may be that you're challenging the sentence that is the product of that extant conviction. But the Court is very clear. Anything that falls short of an actual conviction, you bring your claim. Well, then you think Edwards against Balasag was wrongly decided. No, Your Honor. Because it does not involve a conviction. It just involves custody. It does, but that is a product of the conviction in the case. You can challenge it. There was no conviction that extended the custody in Edwards. The whole point was that the custody occurred after an informal administrative hearing. And the Court says that's enough. Now, Manuel was in custody after an informal judicial hearing. Why isn't that enough for the same reason that Edwards says it's enough? Your Honor, because there was a formal determination in Edwards. Look, even if I can revert. After the loosest of hearings. I mean, I know you, Mr. Skoda, are well aware of the some evidence standard for prison hearings, et cetera. I am, Your Honor. But even the common law recognized that, and we cite this number of cases in our brief, even the common law recognized an exception for proceedings that were, in their barest sense, procedural and meaningful. And if those proceedings had occurred and it resulted in an adverse finding, there was no need under even the common law to prove favorable termination as an element of your malicious prosecution claim. But we're not really talking about elements of a malicious prosecution claim. The Court said, you know, the Court's driving a wedge between the accrual of the claim and then saying, beyond that, was the Fourth Amendment violated? Don't worry about incorporating all the parts of this common law tort True enough, Your Honor. But the Court also said that in deciding even on accrual, one must still revert to that ultimate principle for Section 1983, that you must closely attend to the values and purposes. And there is a disconnect between the values of a Fourth Amendment, intended to protect innocents and guilty alike, and Haring v. Prosse, for example, reaches precisely that holding. And the idea that someone would have to show, they have to be vindicated at the end of their proceedings. Now, if I can return back to the Hecate and Wallace point, I grant the Fallistock point, but you still have, what Wallace makes clear is in the context of a criminal proceeding, and this is the back half of the Court's opinion, and it says this repeatedly, the Court's not going to engage in any speculation, even in a case where one might argue that, well, how could it be that the conviction could be anything other than turning on this initial Fourth Amendment issue. The Court is refusing to engage in speculation as to what the ultimate effect on the conviction will be in light of new evidence and other things that could come to light. The Court even says, we've got bad arrests and good convictions, bad searches and good convictions. Therefore, we simply will not speculate. You follow the approach of granting a stay. And that's what the Court decided upon as the solution for all of these issues. But I guess, I mean, my question about the 10-year person in Alabama relates back to what Judge Easterbrook was saying. The custody branch of problems isn't resolved until the custody's over. You don't know when you go into custody when the end point is. That's true, Your Honor. And if it's a two-year period, and you are aware of all the elements of a Fourth Amendment claim, which is detention without probable cause. So you get damages only for the first two years, is your response? I'm sorry, Your Honor. No, you would file suit within two years of the accrual, and the damages could continue to run as long as you are... And then it just sits there on the district court's docket? That's precisely what Wallace contemplates. It's also what Younger contemplates. Wallace was thinking about this problem, but I'm not sure Wallace was the last word on this problem, especially in light of the language in Manuel against City of Joliet. I think the court realizes that there's work to be done still coordinating these regimes, and that's what it's asking us to make a stab at. Well, I agree with that, Your Honor. And Mr. Scodro, isn't the termination of the trial important as a practical matter in assessing a wrongful detention claim for pretrial detention, and that the person shouldn't be expected to simultaneously defend his criminal case and pursue a civil action? I think Mr. Eisenheimer made that point. And because any conviction after a trial would impact the determination as to whether any injury was suffered. Well, Your Honor, on the question of whether you'd have parallel proceedings and the need to devote multiple resources, I would just note a couple of things. One is that this issue comes up in the last or second-to-last paragraph of the majority in Wallace itself. And there is a claim, and this is responding to a point made by the concurrence, and the response from the majority is, we do not typically create rules that prevent someone who is in custody from having to proceed in another litigation. I think he uses a civil case as an example. The Court uses a civil case as an example. The Court's answer, though, again, is to return to this notion that just as stays are typically appropriate in the context of a younger claim that's barred, the same stay would be in place here. You bring your claim, and we have numerous cases from this Court saying, for example, that the reason you're supposed to stay a younger barred case is to preserve the limitations. In other words, it's not being told just because if you had brought it in federal court at that point, the Court might have concluded that younger applied. And the same is at work here. You bring the claim. Wallace, frankly, addressed this and took on precisely that issue. And it is counterbalanced against the need for timely notice, which was discussed also in Wallace, and the other accrual and limitations policy issues that come into play in this balancing. But that's the point that the Court reached in Wallace, and it applies equally here. If you file a claim, the Court said, if you have an instance where there is no conviction and recognizing that there is a separate decision made for the procedure at work in Balasag, but if you have filed, if you're in a criminal proceeding, and you file a claim before there is a conviction, we will not, we simply will not categorically speculate as to whether there will be a conviction, and if so, what role your claim will play in that conviction. Accordingly, the idea is to stay. And the Court made very clear that you're not going to bet on whether or not it will later affect a conviction. And you can sit back and hope, hope that maybe heck will apply, because you will be convicted, and it will be part and parcel of that conviction. You cannot do that, no matter how strong your theory may be, that your claim would ultimately affect a conviction. Wallace simply couldn't have been clearer, and I think this falls squarely in that zone. And if I could return even briefly to the notion that favorable termination is simply at odds with the ultimate Fourth Amendment rights, it's where this argument began, where the Fourth Amendment rights at issue in this case. It cannot, their argument cannot be squared with Herring. It ultimately depends on the theory that only the truly innocent, by which plaintiffs, they define that to be someone who is ultimately exonerated, only the innocent are entitled to these Fourth Amendment protections. And that is simply inconsistent with the wealth of case law going back decades, saying that that simply isn't what the Fourth Amendment does. We would therefore ask that this Court, I think to Your Honor's earlier point, the Supreme Court leaving this question open has provided an opportunity. There was a heavy split, heavily favored, using favorable termination. Against you, I would say. Against us. I don't know if anybody has changed their minds. Absolutely. Excuse Manuel. And I think that the Manuel asking the question without answering it has provided an opportunity to revisit this and to do what the plaintiff in Markheim suggests, and that is not tie Fourth Amendment rights to favorable termination. All right. Thank you very much. Thank you. Mr. Eisenhammer, anything further? I think I should take the Court's admonition that the reasoning in Prieser and Heck apply and end it there. But I do want to say that with Manuel, when you commented that Manuel says there's work to be done, I think Wallace adds to that because Wallace was talking about a pre-legal process case, and it indicated there that after legal process begins, if the Fourth Amendment applies, which it now does, that different rules apply, and they analogize that to malicious prosecution for all the reasons that were talked about in Prieser and Heck. And with respect to the younger abstention doctrine, you abstain, but the case is contained, and you go back to that particular case. And this Fourth Amendment is designed to protect the innocent, and that's what we're talking about here, is innocent people like Manuel and Jones and Julian, where there wasn't even enough evidence to prove probable cause, and they were held in custody and in confinement and in jail due to police misconduct. And they should have a remedy that allows them to get all of the damages for the whole time that they were in there and not force them to bring cases before they become, in a sense, ripe. Thank you. All right, thank you very much, Mr. Eisenhamer. Thank you, Mr. Scodro. We will take the case under advisement, and the court is going to take a brief about five-minute recess.